May it please the Court, I'm Victor Haltam, attorney for the petitioner Andrew Crater. In this case, the magistrate judge, in recommending a grant, noted rather obviously that the state trial court's, the state trial judge's comments to Mr. Crater here reflected a pre-judgment of guilt on the part of the trial judge. The trial judge said, you're going to be found guilty of first-degree murder. You're going to be found guilty of everything that the offer being extended to you asks you to plead to. You will not leave prison except in a pine box unless you take this offer. I know everything that happened that night. It would be a stupid decision to reject this offer. I know, and I've read the whole thing, and it's clear to me that, among other things, Mr., what's his name, Crater's lawyer was sitting in there while all this happened. Yes, she was. And did she object to, first of all, to the meeting? She did not. Did she object to anything that the judge was saying during the meeting? She did not object. As a matter of fact, the judge kept referring to her. You know, I sat through a thousand of these things. You don't do them in federal court, but you do them in state court. And this was all to try to get this guy to help himself, and the judge was actually helping the lawyer. It's clear to me the lawyer wanted him to take this deal, and what they do is they secure the judge's assistance. Hey, judge, you know, talk to this guy. And then when it didn't work, then they changed their strategy. But this was not an uncommon scenario in state courts back then. The judge wasn't showing bias. He was trying to save this guy from the possibility of special circumstances. I agree with you to an extent. The magistrate judge recognized as much where he said in a footnote in his findings and recommendations, maybe this event was at the behest of defense counsel asking the judge, hey, judge, will you take this guy to the woodshed? Sure it was, or else the defense attorney would have been jumping up and down. But then why, Your Honor, did a day or two later defense counsel move to have the judge disqualified based upon the nature of the remarks made during the meeting? A dollar short and a day late. It didn't work? Well, we better get this guy out of here and try somebody else. You're shifting tactics. I think that's true. You made a decision? It didn't work? Well, let's try plan B. I think that that ascribes a measure of disingenuousness to defense counsel. No, it doesn't. I mean, defense attorneys do this all the time. That's what they're paid to do, represent their client. You try something that doesn't work, you try something else. Okay. It's good tactics on her behalf. Well, we've got nothing to lose. Let's try to get rid of this judge and get somebody else. Regardless of defense counsel's motives, regardless of how this conversation began, the fact of the matter is we have these statements. But my point is the State court took a look at this. The State court took a close look at this and concluded that there's no actual bias shown. He said, hey, I try cases. If this one doesn't go, I'll just try another one. I don't have anything against you. I'm trying to help you out. You're a young man. I'm trying to help you out. And the State court took a look at this and they found no actual bias and implied bias doesn't work. What's the problem with that, with the deferential standard of review that we have to use in looking at the State court? I certainly don't quibble and I've not argued and it's never been argued either on direct review or in habeas proceedings that there was any actual bias. The question here is one of appearance of bias. And the – I think as the magistrate judge said, it's undeniable that an objective person that looks at a discussion between a man in a robe and a man sitting in orange, as they do in Sacramento County Jail, telling him you're going to be found guilty. I know what happened that night because I sat over the previous trial. If you do not take that decision, you're making a stupid decision. I mean, that's – the magistrate judge in this case is an experienced, well-respected judge and he said there's just – it's obvious that what that is is an expression of prejudgment of guilt on the part of the State trial judge. If a lawyer sits down with a client and says you're going to get convicted, you're going to go to the gas chamber if you're not careful. The evidence is all against you. Is that appropriate for a lawyer to say that to a client? Yes. Here it seems to me that the defense attorney enlisted the judge to try to back up that assessment that was already given to him. And he wouldn't go for it. Let's get the judge to see if he can't convince him. I don't think that changes the analysis, though, Your Honor. The problem is the appearance here where you have the judge who's presiding over the trial and the appearance to society at large. We have a record of this. Let's not forget that this all occurred in chambers. Correct. This wasn't in front of the jury. It wasn't in front of even anything that the public could generally see. Correct. But what does a person who – just Joe Citizen who looks at this transcript and sees the exchange between Judge Park and Andrew Crater, a 19-year-old, think? Joe Citizen thinks the judge is a softy. What the hell is going on here? This guy ought to be going to the gas chamber. That's what Joe Citizen thinks. See, Joe Citizen hates plea bargaining. I think that Joe Citizen, looking at this, may think, okay, this kid, because of his role in the offense conduct that resulted in the death, the tragic, unnecessary death of another man, may deserve whatever penalty. But Joe Citizen isn't in this room and it wasn't in that room. The law was in the room. And we're dealing with the law and what the law of bias is. And what you're – I think what you're trying to argue here is that because of the appearance of this judge in a black robe in a settlement conference will never go right. And you're right. If you're right, there should never be a judge in a room in a settlement conference. But that's not what the law is. And when he's trying to comment, he was saying, this is what I think the jury's going to find. I saw the last jury. And he says to him, if you – let me tell you where you are. If you lose your only argument, the special circumstances, you're going to end up right where we are today with the same sentence. And let me tell you what the law says and what I'm going to sentence you. Now, what's wrong with that? He's telling him the truth. Now, if he was lying to him or skewing it around, but he told him what the jury – he thought the jury was going to do observing one, he told him what the law was, he told him what was going to happen if he lost the special circumstances. Now, if that's wrong for a guy in black to do in a settlement conference, then it all goes out the window. But that's not what the law is. Mark, we're talking about the law, not what a common person would do. And as Judge Trott says, common persons say, hang him. What's this business about plea conference? But those are two separate things, the hang him attitude, because there's very little dispute. Yeah, but what does the law say about a judge sitting in a settlement conference? Well, the State law allows a judge to sit in a settlement conference. There you go. And there's no Federal law prohibiting it. That's right. But there is Federal law, U.S. Supreme Court law prohibiting a judge who presides over trial from expressly predetermining guilt, which is clearly what happened here. Unger v. Serafite, cited in my brief, that's exactly what the U.S. Supreme Court said. But you have to go back to the underlying facts of those. What you're doing is you're taking general statements about bias and trying to make this one of those general bias things. What did the judge do? He commented on what he thought the jury was going to do. He didn't say, I'm going to make sure you go guilty. I'm going to make sure I'm going to make rulings that you'll be guilty. He said, I looked at the first trial. I think this is what the jury is going to do. And is that an expression of bias? Is that an expression of bias by the judge showing, I think the jury is going to find you guilty? But that's not what he said, Your Honor. He – I think that's kind of what the district court tried to say, but I don't believe what the judge said. Right. And I'm quoting his words, too. You're going to be found guilty of first-degree murder. By the jury. Well, he didn't say it there. Who else is going to do it? We're not going to have some deity come down and do it, and neither will he come down and do it. He was being tried. They're talking about the facts. Now, who else would be doing that? Well, obviously, the jury. I mean, the judge isn't going to make the decision, but that's – if the judge and the cases that I've cited, the law review articles I've cited, recognize that if you have a judge who has expressly predetermined the individual's guilt, then how is that person going to get a fair trial? Is there anything in the case itself, the way it was tried, that suggests that there was bias and it was functioning against the defendant in the courtroom? Not at all. And that's why there is – Isn't the proof of the pudding always in the eating? I mean, you're saying the guy was biased. Well, you look at then the behavior during the trial, there's no evidence of it at all. I'm not saying he was biased, Your Honor. I'm not saying that at all. I'm saying that these unfortunate remarks cannot be fairly construed in any manner other than as to reflect that, hey, the judge has predetermined this guy is guilty. If he doesn't take – But if there's no – if there's no actual bias, what good is an appearance if the appearance is a false appearance? I think then, Your Honor, I would respectfully say your argument is with the Supreme Court in the Etna case where it said that appearances matter. It's not – we're not going to limit – Federal law allows State judges to participate in this stuff. It's probably a better policy the way we have it in Federal courts not to allow Federal judges to get involved in these kinds of discussions, but Federal law doesn't prohibit it at all. And that's what happens in these things. I mean, I sat through hundreds of these kinds of things. And I've done my share of State work as well, Your Honor, but that doesn't change the fact that the law is what the Supreme Court – How can you have a settlement conference if the judge, talking about what he thinks the jury is going to do, can never say, I think the jury may convict you? Why have a settlement conference? What's the purpose? To sit around and have coffee? The whole point is, what are you looking at? Or else you wouldn't have a settlement. Why should I settle if I'm going to get off and the jury is going to let me go? Somebody is going to have to say something. I agree that when you have a settlement conference and the role of a settlement judge may be to take the parties in separately and point out the weaknesses of their respective cases. But here, what you have is not just that. You have a judge saying, you're going to be found guilty. I know what happened that night. If you don't take this deal, you're stupid. We get your point. Counsel, we understand your time has expired. Thank you. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honors. Brian Means, Deputy Attorney General on behalf of the state. I agree with the observations the Court's made already concerning the nature of settlement negotiations. I'd like to focus, if I could, on primarily the ADPA aspect of this case. There simply is no clearly established U.S. Supreme Court precedent that says the mere appearance of bias is unlawful on the part of a judge. The Court has identified two circumstances where judicial bias is inappropriate. The first is when there's actual bias. It's all agreed among the parties there's not actual bias in this case. That leaves us with the other category. The second category is presumed biased. That's when the judge has an actual, substantial, and direct influence by some other source. That there's some incentive defined for a party one way or the other. The Supreme Court has so far identified only three categories of cases of presumed bias. One is where the judge has a significant pecuniary interest in the case. The second is where there is a conflict between one of the litigants and the Court. And the third case is when the Court functions as both an adjudicator and an investigator. Neither of those three circumstances are present here. Therefore, clearly established law does not support Petitioner's claim. That simple. The Intermediate Court of Appeals have reached the same conclusion. Four circuits, the Third, Seventh, Tenth, and Eleventh, have all explicitly rejected the idea that a mere appearance of bias is sufficient. They've all subscribed to the idea that the U.S. Supreme Court has dictated that presumed bias requires that the judge have an actual, substantial, and direct interest in the case, some specific motivation. Two courts of appeals, the Second and Third Circuit, have specifically answered the question presented here and said that the mere appearance of bias is not clearly established. The Eighth Circuit is the only circuit to have said something different. It says the appearance of bias is sufficient. But when you read the case in context, it's clear that what the Court is saying is that when you have one of the circumstances the U.S. Supreme Court has said that there is a presumed bias, either the financial incentive, the conflict with the judge, or an interest indicates in some other manner, that in those circumstances, those are clearly established. It's my view at Eighth Circuit cases that they weren't reading that any more broadly than that. Counsel, can I move to one of the other issues, the refusal to change the venue? Do you have any comment on that issue? I do, Your Honor. A couple thoughts. First of all, I wanted to preliminarily note that the Petitioner has argued or indicated this is independent review. This is not an independent review. This is an ADPA case subject to 2254d1. Second, I'd also want to note that because of the general standard, the wide and broad standards that are applied by the Supreme Court in the context of pretrial publicity, that pursuant to the Supreme Court's decision in Yarbrough v. Alvarado, that we give the State courts' adjudications wide berth in determining their reasonableness. And I briefly just touched on the fact that what we're looking for under the de novo constitutional standard, aside from putting the ADP overlay on top of that, is that it must be found that it was impossible, impossible to seat an impartial jury. And the Supreme Court said this is a rare circumstance and only in extreme situations. Now, the first two factors of three that the Supreme Court has identified are grouped together. The first one deals with a barrage of inflammatory statements or media publicity immediately preceding file. The second one is whether they're factual or editorial in nature. If we look at the nature of the media publications, particularly the print media, the initial articles began to appear toward the last half of 1995. From October 1995 to early 1997, there were only nine articles concerning this case that is referenced by the petitioner. One of them has nothing to do with this. It deals with the Pantages Theater in Hollywood, which is not related to this case. The other eight have maybe a sentence or two somewhere in the variety, the encore, the ticket section buried in the paper that there will be a benefit at the Pantages Theater or some very general reference to the victim. These were not stories about the crime. Then about a half a dozen articles appeared in the paper immediately preceding Robinson's trial. I think here that as a Supreme Court counsel in Patton v. Yaunt, the passage of time here was sufficient to dispel any prejudice that may have occurred. Nearly two years had passed from the initial articles that were published, including the editorials. Thus, to the extent there was any sense of prejudice early on, which I don't think there probably was, but even to the extent there was some, the nearly two years' lapse would have been more than sufficient to undo that prejudice. Was there a – was the change of venue motion renewed after the jury was selected? It was deemed to be continuing, Your Honor. Okay. The prejudicial aspect I think also deserves attention. In this particular case, there was no dispute Robinson was the shooter. There was no dispute that Mr. Crater was present. There was no dispute that other crimes had been committed or that Pantages was murdered. Those were all undisputed facts. The only question at trial was, did Mr. Crater have the regulative mens rea to form the intent for being an aider and a better? Virtually nothing in the publicity was relevant to that issue. This wasn't a whodunit. And – I'm sorry. No, if you're going to finish up that point, I want to ask you about another question. I'm finished, Your Honor. Counsel has raised the question of the constitutionality of AEDPA. What's your response? Very briefly, Your Honor. The U.S. Supreme Court has been applying the ADPA for some 10 years now without so much as a hint that there's a problem with it. And indeed – How about the sentencing guidelines? I think that's a different situation, Your Honor. They've been applying that for 25 years. Well – Oh, they tank that. I think the difference here would be in Williams v. Taylor, the Supreme Court had the opportunity. In fact, the dissent in that opinion had indicated that to deprive the federal judiciary of its independence would be unconstitutional under Article III. The majority implicitly but undeniably rejected that approach in applying the objective reasonableness standard to 2254 D.2. Now – Sorry. Was this issue even before us? It wasn't raised in the trial court, was it? It was raised for the first time – you're referring to the district court of the trial court, correct? It was raised, I believe, for the first time in the request for a certificate of appealability. My understanding was this was prompted by – Irons. Yes, exactly. And arguably the position I assume would be made is that they – that was the impetus behind it. Assuming the Irons panel has either withdrawn the issue or simply isn't going to proceed to decide that issue, this panel could. And the question I have is do we need to say anything more than we've said in Ducharme v. Duhame? I believe so, Your Honor. There was a little bit of a difference in the way the issue was presented there. That had to do with the nature of the authority that the court would look to, more specifically, that they could not look to lower court, circuit court, or district court authority, but they were required only to look to clearly establish U.S. Supreme Court law. That was really the focus of this case in Ducharme. Other courts had – So in other words, Ducharme really doesn't decide the constitutionality issue so far as the Ninth Circuit is concerned? I don't believe that it squarely addresses the issue that's raised here. Although other circuits have. So we're talking the difference between separation of powers issues and the substantive rules of decision which the Supreme Court must decide rather than lower court. Yes, correct. So you think we're in the area in this case that has been raised of the separation of powers? No, no, no, no. I'm sorry if I misunderstood your question. I'm not very articulate. As I understand the order issued by Judge Reinhart and Noonan of this circuit on May 18th, they raised the issue of the jurisdiction unconstitutionality prescribing the substantive rules of decision by which the Federal courts must decide constitutional questions. So that's one of the issues. In other words, can we go down to a State justice court and grab a case and say, well, that's going to be the decision for the constitutional law in this case? Well, that's not so under AEDPA. So apparently they've invited that question by that order. The parties should consider whether under the separation of powers doctrine for any other reason involving the constitutive discourse should apply, decline to apply AEDPA standards in this case. So as I read the order, this mind is floating out there now in the Ninth Circuit law. There's two issues. One, what law do you look to when you're deciding an AEDPA case? And whether the Congress, by providing that Supreme Court law is the law you look to, does that violate the separation of powers? Now, following up Judge Loscano's questions, what do you think we should decide if we're not in the problem with this mind that's floating out there by this order? I think I'm out of time. May I briefly respond, Your Honor? Certainly. I see this as two-part. The Duchene case addressed the issue of looking to what source of authority and whether that violates Article 3. That would be Part 1. Right. Part 2 is where I believe they're raising and arguing here, correct me if I'm mistaken, that the use of and reliance – I'm sorry, let me restate that – that applying an objective and reasonableness test to State court adjudications runs contrary to Article 3 and the premise of Marbury v. Madison. Now, while two other circuits have explicitly rejected that, and I think that the Supreme Court in Williams v. Taylor implicitly rejected that, I don't think Duchene went far enough to get to that precise point. All right. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Brunetti, O'scannlain, Trott